# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jan 23, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>a black 2017 Chevrolet Suburban, bearing Texas license plate TNH3171, VIN: 1GNSCHKC4HR276783 | ) ) ) ) ) ) )  Case No.  24  MJ  40<br>**Matter No.: 2023R00468** |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __846/841(a)(1)__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☒ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☒ evidence of a crime;

☒ property designed for use, intended for use, or used in committing a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☒ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

☒ Delayed notice of _____ days (give exact ending date if more than 30 days: __07/23/2024__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature* 01·23·24

SA Jeffrey Milam, DEA

*Applicant's printed name and title*

☐ Sworn to before me and signed in my presence.

☒ Sworn to telephonically and signed electronically.

Date: 01/23/2024

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Hon. William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT
## Matter No.: 2023R00468

I, Jeffrey Milam, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a **black 2017 Chevrolet Suburban bearing Texas license plate TNH3171, vehicle identification number (VIN) 1GNSCHKC4HR276783** (herein referred to as the "**Suburban**"). Based on the facts set forth in this affidavit, I believe that the **Suburban** is presently being used in furtherance of violations 21 U.S.C. §§ 841(a)(1), 846, and 843(b), and that there is probable cause to believe that the installation of a tracking device on the **Suburban** and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent with the Drug Enforcement Administration, and have been since September 2014. Before that, I was employed as a police officer with the St. Louis County Police Department in St. Louis, Missouri, where I spent the last three years as a Task Force Officer with the DEA. During my tenure as a Special Agent, I have been involved primarily in the investigation of large-scale drug traffickers operating not only in the City of Milwaukee and the State of Wisconsin, but also throughout the entire United States based upon the direction of investigations that arise through the Milwaukee District Office of the Drug Enforcement Administration.

1

3. As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4. Based upon my training and experience, as well as information relayed to me during the course of my official duties, I know that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, and methamphetamine, imported into the United States comes from Mexico and enters the domestic market at various points along the southwest border

2

of the United States, because Mexican cartels control the transportation, sale, and importation of cocaine, marijuana, heroin, and methamphetamine into the United States.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, or will be committed by George WOODS (DOB: 01/23/1975), Darius JARRETT (DOB: 01/29/1972), Kenneth BEVERLY (DOB: 05/23/1976), Carlos GARZA (DOB: 11/12/1964), Dante MCDONALD (DOB: 07/09/1979), and other unknown persons, collectively identified as the WOODS Drug Trafficking Organization (DTO).

## PROBABLE CAUSE

7. The United States, including Drug Enforcement Administration, is conducting a criminal investigation into George WOODS, Darius JARRETT, Kenneth BEVERLY, Carlos GARZA, Dante MCDONALD, and other unidentified subjects for possible violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b).

8. In late 2023, case agents debriefed a confidential source (hereinafter referred to as the CS),[1] who provided information on a large-scale drug distributor named George WOODS.

---

[1] For several reasons, case agents believe the CS's information is reliable and credible. Substantial parts of the CS's information have been independently corroborated and verified by law

3

The CS stated he/she was recently introduced to WOODS through an acquaintance in Milwaukee, Wisconsin. The CS stated WOODS distributes large quantities of cocaine, heroin, and marijuana throughout the Midwest area of the United States. The CS stated that WOODS indicated that he (WOODS) makes bi-monthly trips to Texas, where WOODS meets with a currently unknown source of supply (SOS) near the U.S./Mexico border to obtain upwards of two hundred (200) kilograms of cocaine and/or heroin, and one thousand (1,000) to two thousand (2,000) pounds of marijuana. WOODS utilizes a currently unknown method to transport narcotics from the southern Texas border to various locations throughout the United States, including Milwaukee, Wisconsin; Chicago, Illinois; and Arizona. The CS stated WOODS owns/operates a trucking company, owns multiple properties, and multiple luxury vehicles, all of which are believed to be purchased with drug proceeds. The CS stated WOODS frequented a multi-unit apartment building in Milwaukee, later identified as 915 N. 24th Street, Milwaukee, Wisconsin. The CS stated that a black male subject, known only as "BUNK", oversees the day-to-day operations/distribution of narcotics at 915 N. 24th Street. The CS added that WOODS uses multiple apartments within this building to store and distribute narcotics.

9. WOODS indicated to the CS that his (WOODS's) Texas-based source of supply (SOS) can obtain large quantities of narcotics for WOODS. WOODS further indicated that WOODS flies to Texas via commercial carrier before driving to the U.S./Mexico border to

---

enforcement. The CS has made direct observations, which were further corroborated and verified by law enforcement. The CS's information has been consistent with information obtained from travel records, telephone toll records, social media records, public databases, and surveillance. The CS has also provided information on violent crimes unrelated to this investigation, leading to the arrests of multiple suspects. The CS has prior convictions for theft, possession of controlled substances, possession of a firearm by a felon, manufacture or deliver controlled substances, and parole violations. The CS is cooperating for financial compensation.

facilitate the drug transactions with the SOS. WOODS identified the SOS as "CORTO," and based on WOODS's description of "CORTO," believes that "CORTO" is an Hispanic male. The CS indicated WOODS's telephone number is (414) 406-2832. The CS was later shown a Wisconsin Department of Transportation (DOT) photograph of WOODS (without identifiers), which the CS positively identified as WOODS.

10. In late November 2023, the CS stated that he/she was present at 915 N. 24th Street, Milwaukee, Wisconsin, when WOODS brought approximately twenty (20) kilograms of suspected cocaine and/or heroin into the building. The CS stated WOODS arrived in a black Cadillac Escalade, from which he (WOODS) removed three duffle bags containing the approximate twenty kilograms of drugs. WOODS placed the duffle bags and their contents into a first-floor apartment, which was occupied by unknown subjects. The CS saw the approximately twenty brick-sized objects and observed a vintage photograph of a male wearing a large hat, with two Bandoliers draped across his chest, attached to the outside of one of the kilogram wrappings. The CS further confirmed that there is a main entrance door on the south-side of 915 N. 24th Street. The CS has used this entrance on previous occasions.

11. On November 29, 2023, case agents conducted surveillance of 915 N. 24th Street. At this time, case agents observed a black Chevrolet Suburban parked directly in front of the residence. The Chevrolet Suburban displayed a Texas temporary registration of 4267H51. Through a law enforcement database, the registration listed to Kenneth D. BEVERLY, 914 Blewit Dr., Cedar Hill, Texas on a 2017 Chevrolet Suburban (**Suburban**). The **Suburban** appeared to be purchased from Gerald's Auto Sales Inc., 208 NW 28th Street, Fort Worth, Texas. Case agents also observed a blue Dodge Durango with Ohio registration: JDE9086, registered to a Darius JARRETT, 101 Towne Commons Way, Apt. 11, Cincinnati, Ohio on a 2006 Dodge Durango. The Dodge Durango was parked directly across the street from 915 N. 24th Street.

12. At approximately 11:57 a.m., case agents observed a black male subject, having a black and grey beard, walk from the south side of 915 N. 24th Street towards the Dodge Durango. The black male subject opened the driver door to the Dodge and leaned inside momentarily before entering and departing in a maroon Buick Park Avenue, which had been parked in front of the Dodge. Case agents later obtained a Wisconsin DOT photograph of Darius JARRETT, who strongly resembled the black male subject observed accessing the Dodge, before departing in the Buick Park Avenue.

13. While remaining in the area, at approximately 12:26 p.m., case agents observed another black male subject arrive in a black Ford van with no registration. The black male subject, wearing a black hoodie and black facemask, walked up to the south side of 915 N. 24th Street, between 915 N. 24th Street and 911 N. 24th Street. Case agents observed a second subject who remained sitting in the front passenger seat of the black Ford van. At approximately 12:35 p.m., the black male subject in the black hoodie walked from the south-side of 915 N. 24th Street towards the black Ford van. At this time, case agents observed the black male subject appeared to be carrying a white object in his left hand before entering the driver's compartment of the black Ford van. Case agents attempted to follow the Ford van, but lost sight of the black Ford van and terminated surveillance. Case agents believe the black male subject in the black Ford van arrived at 915 N. 24th Street to conduct a drug/money transaction. This belief is supported by the short timeframe the black male subject remained at 915 N. 24th Street, the case agents' observation of the black male subject appearing to carry a white object (suspected narcotics) in his hand before departing the area, and information previously-received by case agents that multiple apartments inside 915 N. 24th Street were being used by the WOODS DTO to store and further distribute controlled substances.

14. Case agents returned to 915 N. 24th Street, and at approximately 3:15 p.m., a black male subject, wearing a grey hoodie and black jacket, walked from the front of 915 N. 24th Street, and entered the driver's compartment of the **Suburban**. At this same time, a second black male subject (believed to be JARRETT), walked from the front yard of 915 N. 24th Street, and entered the Buick Park Avenue. Both vehicles departed the residence. After briefly following the **Suburban**, case agents observed the driver park in the area of W. North Ave. and W. Sherman Blvd. A male subject exited the vehicle and stood on an adjacent sidewalk. Case agents observed the subject to be a light-skinned, black male with a black beard and a medium build.

15. Case agents conducted telephone toll analysis of WOODS's telephone, i.e., (414) 406-2832, and identified frequently called numbers. Through a law enforcement database, the top two numbers -- (414) 416-3339 and (414) 915-3092 -- list to a Shanequa Collins. Case agents queried social media (Facebook), inputting the name "Shanequa Collins," and identified a profile having the name "Nene Bre'Arie." In the public photos section of this profile, case agents identified numerous, recent photographs of a black female subject posing with a black male subject, who case agents positively identified as WOODS. Case agents believe Collins is the girlfriend of WOODS.

16. The telephone number (817) 707-5423 is the third most-frequent contact for WOODS's telephone. A law-enforcement database lists the user of (817) 707-5423 as Carlos J. GARZA. GARZA lists an address in Fort Worth, Texas. Case agents further conducted telephone toll analysis for (817) 707-5423. Initial overlaps were identified between WOODS's telephone number, i.e., (414) 406-2832, and (817) 707-5423. Specifically, in addition to contact with each other, both WOODS's telephone number and (817) 707-5423 were in frequent contact with (414) 336-9608, which was listed in a law enforcement database to Kenneth BEVERLY. BEVERLY was previously identified as the recent owner of the **Suburban**, observed at 915 N. 24th Street in

7

late November (as detailed in paragraphs 11 and 14). Based on the investigation to date, case agents believe that GARZA may be associated with "CORTO," the alleged Texas-based drug source for WOODS.

17. The telephone number (414) 574-6421 is another frequent contact of WOODS's telephone number, i.e., (414) 406-2832. Through a law enforcement database, (414) 574-6421 lists to Darius JARRETT. Additionally, JARRETT was the subject of an anonymous drug tip submitted to the DEA Milwaukee District Office. In the drug tip, JARRETT was identified as a large-scale cocaine and fentanyl distributor, who uses telephone numbers (414) 574-6421 (in contact with WOODS) and (262) 765-1263. The drug tip also stated that JARRETT drives a blue Dodge Durango with Ohio registration JDE9086, a vehicle previously identified by case agents during surveillance (detailed above in paragraph 11 and 12).

18. Case agents continued to exploit social media databases and identified a male subject appearing in several Facebook photographs alongside WOODS and others. The male subject appeared to be an older black male, with a black and grey beard, wearing designer sunglasses. Utilizing a law enforcement database, case agents tentatively identified the male subject as Dante MCDONALD. The CS was shown a Wisconsin DOT photograph of MCDONALD (without identifiers), who the CS positively identified as "BUNK."

19. Case agents later identified telephone number (414) 573-7220 as a frequent contact of WOODS's telephone number, i.e., (414) 406-2832. In a law enforcement database, this number is listed to a Dante MCDONALD of 915 N. 24th Street, Apt. 11, Milwaukee, Wisconsin.

20. On December 6, 2023, case agents conducted surveillance of 915 N. 24th Street. At this time, case agents observed a black Chevrolet Tahoe with Texas temporary registration: 4317D85. According to the registration, the vehicle is a black 2021 Chevrolet Tahoe, VIN:

8

1GNSCNKD6MR249473, and registered to Kevie Timmons, 3516 Grandy Street, Fort Worth, Texas. The dealer details listed Gerald's Auto Sales Inc., 4416 S. Freeway, Fort Worth, Texas.

21. Case agents observed a male subject exit the Tahoe. The unknown male subject was carrying a bag as he walked to the southside entrance to 915 N. 24th Street. Case agents observed two occupants (a driver and front seat passenger) in the Tahoe at this time. Minutes later, the Tahoe departed the area driving past case agents' fixed location. At this time, case agents positively identified the driver as WOODS, and the front passenger as MCDONALD.

22. Case agents queried the temporary Texas registration on the Tahoe through a law enforcement database. On November 8, 2023, at approximately 3:46 p.m. (CST), the Tahoe was captured on a license plate reader (LPR) traveling north on Interstate 55 in Pemiscot County, Missouri. Additionally, case agents queried the temporary Texas registration on the **Suburban**, which captured the **Suburban** on November 8, 2023 at approximately 4:18 p.m. (CST) traveling north on Interstate 55 in Pemiscot County, Missouri. Based on the fact that the Tahoe and the **Suburban** traveled the same roadway, on the same date, just thirty (30) minutes apart, strongly indicates that members of the WOODS DTO were caravanning from Texas to the Milwaukee, Wisconsin region.

23. On December 8, 2023, the Honorable Stephen C. Dries, U.S. Magistrate Judge, Eastern District of Wisconsin authorized a Pen Trap and Trace and search warrant for GPS precision location information (pings) on WOODS's telephone, i.e., (414) 406-2832. On this same date, case agents learned that WOODS's telephone was in the area of Fort Worth, Texas. The telephone remained in the general area of Fort Worth and Dallas, Texas over the next several days. During this time, WOODS was in frequent contact with MCDONALD, GARZA, and JARRETT.

24. Case agents again queried the temporary Texas registration on the **Suburban**, an LPR captured the **Suburban** in Milwaukee, Wisconsin on December 11, 2023 at approximately 11:20 a.m. On December 12, 2023, at approximately 1:04 p.m., the **Suburban** was captured (LPR) in the area of WB (westbound) 100 and NW 28th Street in Fort Worth, Texas. Based on the above timeframes, case agents believe the **Suburban** was driven non-stop from Milwaukee, Wisconsin to Fort Worth, Texas on December 11 to December 12, 2023.

25. On December 12, 2023, case agents monitored the location of WOODS's telephone, i.e., (414) 406-2832, and throughout the day, the telephone appeared to be in close proximity to three (3) municipal airports in the Fort Worth, Texas and Dallas, Texas regions. At approximately 10:34 a.m., WOODS's telephone was in close proximity to the Hicks Airfield, located at 100 Aviator Dr., Fort Worth, Texas. WOODS's telephone remained in the general area until approximately 12:19 p.m. At approximately 10:18 a.m., WOODS received an in-coming call from telephone (817) 707-5423, which is believed to be used by GARZA.

26. At approximately 3:03 p.m., WOODS's telephone appeared to be in close proximity to the Perot Field Fort Worth Alliance Airport, located at 13901 Aviator Way, Fort Worth, Texas. At approximately 5:19 p.m., WOODS's telephone appeared to be in close proximity to the Dallas Executive Airport, located at 5303 Challenger Dr., Dallas, Texas. Case agents believe WOODS and/or his associates drove to the above-referenced airports where they remained for a relatively brief period.

27. On December 14, 2023, case agents monitored the court-authorized GPS pings on WOODS's telephone. At approximately 5:42 a.m., WOODS's telephone was in the area of the Dallas Love Field Airport in Dallas, Texas. At approximately 10:57 a.m., WOODS's telephone was showing to be in the area of Milwaukee Mitchell International Airport.

28. Case agents established surveillance in the Milwaukee, Wisconsin region in anticipation of WOODS's return. At approximately 12:32 p.m., WOODS's telephone was showing to be in the area of W. Brown Deer Road and N. Green Bay Road in Brown Deer, Wisconsin. At approximately 12:34 p.m., case agents observed a black Chevrolet Tahoe with Texas registration TNH-2156 traveling south on N. Deerbrook Trail from W. Brown Deer Road. The registration listed to Kevie Timmons, 3516 Grandy Street, Fort Worth, Texas on a 2021 Chevrolet Tahoe. The Tahoe turned into The Bevy Apartments located at 8600 N. Deerwood Dr., Brown Deer, Wisconsin. At this same time, WOODS's telephone was showing to be in the general area of The Bevy Apartments.

29. The Tahoe parked directly in front of 8720 N. Deerwood Dr. as the driver exited the vehicle. The driver stood near the rear hatch of the Tahoe, and was positively identified by case agents as MCDONALD. MCDONALD stood outside the Tahoe for several minutes as he appeared to be waiting. Approximately fifteen minutes later, a white Mercedes SUV pulled into the same apartment complex, and entered a parking structure located below 8720 N. Deerwood Dr. The Mercedes displayed Wisconsin registration ATF-1713, registered to a Shanequa Collins, on a 2021 Mercedes GLS. Case agents observed the Mercedes was occupied by a driver and front passenger. Case agents previously learned that Collins was the girlfriend of WOODS, and further believed that WOODS and Collins were the occupants of the Mercedes as it arrived at the apartment complex.

30. At approximately 12:56 p.m., case agents observed a black male subject exit from the main lobby door of 8720 N. Deerwood Dr. The male subject was positively identified by case agents as WOODS. WOODS was wearing a red/white baseball cap, and red hoodie as WOODS entered the driver seat of the Tahoe. Case agents could see a second occupant of the Tahoe, later determined to be MCDONALD.

11

31. WOODS and MCDONALD departed in the Tahoe followed by case agents. As the Tahoe traveled south towards Milwaukee, case agents believed WOODS and MCDONALD were traveling to 915 N. 24th Street. In anticipation of this, case agents established surveillance in the immediate area of 915 N. 24th Street. At approximately 1:32 p.m., case agents observed the Tahoe pull up in front of 915 N. 24th Street and park. WOODS and MCDONALD exited the Tahoe, before walking towards the south entrance of 915 N. 24th Street.

32. Case agents remained in the area, and at approximately 1:57 p.m., WOODS and MCDONALD were observed walking back to the Tahoe from the south side of 915 N. 24th Street. At this time, WOODS was rolling a large silver suitcase on the ground. WOODS placed the silver suitcase into the rear driver seat compartment. As WOODS lifted the suitcase, case agents observed WOODS momentarily struggle, suggesting that the suitcase contained something heavy. WOODS and MCDONALD departed in the Tahoe, as case agents terminated surveillance.

33. On December 20, 2023, case agents received a LPR alert on the Tahoe. On this date, at approximately 4:12 p.m. (CST), the Tahoe was captured traveling north on Interstate 55 in Pemiscot County, Missouri. On December 21, 2023, case agents conducted a spot-check of 915 N. 24th Street. At approximately 10:30 a.m., case agents observed the Tahoe parked directly across the street from the building. Case agents believe MCDONALD and/or WOODS are currently using the Tahoe to travel to/from Milwaukee, Wisconsin, and Texas, on behalf of the WOODS DTO. This belief is supported by case agents' observations of WOODS and MCDONALD operating the Tahoe on December 14, 2023, and MCDONALD's association with 915 N. 24th Street, Milwaukee, Wisconsin.

34. In late December 2023, case agents learned that the **Suburban** had transferred the Texas temporary registration to Texas registration: TNH-3171. On January 4, 2024, at

12

approximately 4:47 p.m., the **Suburban** was captured (LPR) in the area of 2260 Evans Ave., Fort Worth, Texas.

35. In early January 2024, case agents spoke to the CS. The CS advised that WOODS planned to resume operations after the holiday season. WOODS further told the CS that MCDONALD is currently overseeing logistics of the WOODS DTO. WOODS elaborated that MCDONALD, working on behalf of WOODS, is coordinating drug transportation routes with currently unknown associates. WOODS added that MCDONALD would be traveling to Texas the first of the new year. Case agents confirmed that on January 1, 2024, at approximately 4:18 p.m., the Tahoe was captured (LPR) traveling south on Interstate 57 near 159th Street in Illinois. Based on this information, case agents believe that MCDONALD drove the Tahoe to Texas on January 1, 2024 to coordinate future drug/money transactions on behalf of the WOODS DTO.

36. On January 5, 2024, the Honorable Stephen Dries, US Magistrate Judge, Eastern District of Wisconsin, authorized a search warrant (Case No. 24-MJ-8) for the installation/monitoring of a GPS tracking device on the Tahoe. On January 8, 2024, case agents installed the GPS tracking device on the Tahoe.

37. On January 9, 2024, the Tahoe was showing to be in the area of 3817 N. Sherman Blvd., Milwaukee, Wisconsin. Case agents conducted a spot-check of the location, and observed the Tahoe parked in the driveway of 3817 N. Sherman Blvd. Through open-source social media (Facebook), case agents tentatively linked this residence to an associate of MCDONALD, identified as Renee Crawford. During the spot-check, case agents observed a black male subject exit from the south side door to 3817 N. Sherman Blvd. The male subject, positively identified by case agents as MCDONALD, opened the rear passenger door of the Tahoe before returning inside the residence.

38. On January 10, 2024, at approximately 11:00 a.m., case agents conducted a spot-check of 3817 N. Sherman Blvd. At this time, case agents observed the **Suburban** parked in the driveway of the residence. The GPS tracking device on the Tahoe showed it to be in the same area, as case agents believe the Tahoe had been parked inside the detached garage.

39. On January 16, 2024, case agents queried a law enforcement database, and observed the **Suburban** had been captured (LPR) at approximately 3:53 p.m. on this date, in the area of W. Fon Du Lac and W. Capitol in Milwaukee, Wisconsin.

40. On January 16, 2024, case agents monitored the court-authorized GPS tracking device on the Tahoe. In the afternoon, the Tahoe traveled throughout the Milwaukee, Wisconsin region, stopping briefly at 915 N. 24th Street. At approximately 10:56 p.m., the Tahoe appeared to be traveling south on Hwy 43 toward Illinois.

41. On January 17, 2024, at approximately 12:59 a.m., case agents received a LPR alert on the **Suburban**. The **Suburban** was captured traveling southbound on I90/I94 near Grand Ave. in Gurnee, Illinois. At this same time, case agents received a LPR alert on the Tahoe, indicating it was in the same area. Case agents believe MCDONALD, and other currently unidentified members of the WOODS DTO were operating the **Suburban** and Tahoe, as they caravanned southbound in Illinois. There were no additional LPR alerts on either vehicle; however, the GPS tracking device on the Tahoe showed it arriving at the Midway International Airport, located at 5700 S. Cicero Ave., Chicago, IL at approximately 7:29 a.m.

42. Case agents later spoke with the CS, who stated WOODS was planning to fly to California to meet with WOODS's marijuana source of supply (SOS). WOODS previously told the CS that members of the WOODS DTO obtain approximately one ton (2000 lbs.) of marijuana at a time from the currently unidentified California-based SOS. Case agents monitored the court-authorized GPS pings on WOODS's telephone, i.e., (414) 406-2832. On January 17, 2024, at

14

approximately 10:50 a.m., WOODS's telephone was showing to be in the area of the Dallas Love Field airport, located at 8008 Herb Kelleher Way, Dallas, Texas. At approximately 3:33 p.m., WOODS's telephone was showing to be in the area of the Sacramento International Airport, located at 6900 Airport Blvd., North Natomas, CA.

43. Based on this information, case agents believe members of the WOODS DTO, including MCDONALD, drove the **Suburban** and Tahoe from Wisconsin to Illinois on January 17, 2024, arriving at the Midway International Airport to coordinate a bulk marijuana drug transaction/shipment with WOODS. This belief is based on WOODS's arrival in Sacramento, CA on the same day. Case agents later conducted telephone toll analysis on WOODS's telephone, i.e., (414) 406-2832. On January 17, 2024, WOODS was in contact with telephone (530) 965-7017 five times. The subscriber of telephone number (530) 965-7017 is Kyle Anthony Silvalarva of 14121 Temple Cir., Magalia, CA. Silvalarva has a prior conviction for Tranport/Sell Narcotic/Controlled Substance. In addition, WOODS was in contact with MCDONALD at telephone (414) 573-7220 three times on this same date.

44. Case agents are requesting the court authorize the placement of a GPS tracking device on a black 2017 Chevrolet Suburban bearing Texas license plate TNH3171, vehicle identification number (VIN) 1GNSCHKC4HR276783 (**Suburban**), registered to Kenneth Beverly. I believe the use of a GPS tracking device on the **Suburban** will obtain valuable information that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances, and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b).

45. Case agents have observed the **Suburban** parked in front of 915 N. 24th Street, and 3817 N. 43rd Street, residences associated with MCDONALD. Law enforcement believes, based on the foregoing, that the **Suburban** is presently within the Eastern District of Wisconsin.

46. In order to track the movement of the **Suburban** effectively and to decrease the chance of detection, law enforcement seeks authorization to place a tracking device on the **Suburban** while it is in the Eastern District of Wisconsin. Because the Suburban has recently been observed parked in the driveway of 3817 N. Sherman Blvd., Milwaukee, Wisconsin 53216, it may be necessary to enter onto private property and/or move the **Suburban** to affect the installation, repair, replacement, and removal of the tracking device.

47. To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. I know through training and experience that DTO suppliers are often surveillance conscious and possess weapons. Law enforcement also requests delayed notice of this warrant for the same reasons. Finally, law enforcement requests permission to enter the **Suburban** in order to install the device contemplated here. Law enforcement will not enter the **Suburban** to install the device unless such entry is ultimately required to effect installation.

48. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## CONCLUSION

49. Based on the foregoing, I request that the Court issue the search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes law enforcement,

16

including but not limited to your affiant and technicians assisting in the above-described investigation, to install a tracking device on the **Suburban** within the Eastern District of Wisconsin within 10 days of the issuance of the proposed warrant; to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **Suburban** after the use of the tracking device has ended: to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter the private driveway of 3817 N. Sherman Blvd., Milwaukee, Wisconsin 53216 and/or move the **Suburban** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Wisconsin.

50. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant until after the end of the authorized period of tracking (including any extensions thereof) for a period of 90 days because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jan 23, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Tracking of )
*(Identify the person, property, or object to be tracked )* )
)
a black 2017 Chevrolet Suburban, bearing Texas ) Case No. 24 MJ 40
license plate TNH3171, VIN: 1GNSCHKC4HR276783 )
) Matter No.: 2023R00468
)

## TRACKING WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district; ☐ is not now located in this district, but will be at execution; ☐ the activity in this district relates to domestic or international terrorism; ☐ other: _____.

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)* ☐ using the object ☑ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: a black 2017 Chevrolet Suburban, bearing Texas license plate TNH3171, VIN: 1GNSCHKC4HR276783.

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by 02/02/2024 *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until 03/08/2024 *(no later than 45 days from the date this warrant was issued)*. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*
☐ into the vehicle described above  ☑ onto the private property described above
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)* Hon. William E. Duffin and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510). I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of 07/23/2024.

Date and time issued: 01/23/2024 at 10 a.m.

*Judge's signature*

City and state: Milwaukee, Wisconsin    Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

Case No.

## Return of Tracking Warrant With Installation

1. Date and time tracking device installed: _____

2. Dates and times tracking device maintained: _____

3. Date and time tracking device removed: _____

4. The tracking device was used from *(date and time)*: _____

    to *(date and time)*: _____ .

## Return of Tracking Warrant Without Installation

1. Date warrant executed: _____

2. The tracking information was obtained from *(date and time)*: _____

    to *(date and time)*: _____ .

## Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*